# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

KEVIN REMILLARD,

                Petitioner,             :     Case No. 2:20-cv-6103

     - vs -                                District Judge Sarah D. Morrison
                                             Magistrate Judge Michael R. Merz

WARDEN, Noble
  Correctional Institution,

                                   :
                Respondent.

---

# REPORT AND RECOMMENDATIONS

---

This is a habeas corpus case, brought pursuant to 28 U.S.C. § 2254 by Petitioner Kevin Remillard with the assistance of counsel, who is appearing *pro bono publico*. The case is ripe for decision on the Petition (ECF No. 1), the State Court Record (ECF No. 8), the Return of Writ (ECF No. 9), and the Traverse/Reply (ECF No. 12). The Magistrate Judge reference in the case has recently been transferred to the undersigned to help balance the Magistrate Judge workload in the District.

**Litigation History**

On June 20, 2017, the Knox County, Ohio, grand jury charged Petitioner with murder in violation of Ohio Rev. Code § 2903.02(A), with a firearm specification, and tampering with evidence in violation of Ohio Rev. Code § 2921.12(A)(1)(Indictment, State Court Record, ECF No. 8, Ex. 1).

No motion to suppress was filed. The case was tried to a jury which found Remillard guilty as charged. (Verdict, State Court Record, ECF No. 8, Ex. 9). The trial court sentenced Remillard to a prison term of fifteen years to life on the murder count, and three years each on the firearm specification and the tampering with evidence count, all to be served consecutively, for an aggregate prison term of twenty-one years to life. (Sentencing Entry, State Court Record, ECF No. 8, Ex. 11).

Petitioner appealed to the Court of Appeals for the Fifth Ohio District through counsel who continues to represent him in these habeas corpus proceedings. The Fifth District affirmed the conviction and sentence. *State v. Remillard,* 2019-Ohio-3545 (5th Dist. Aug. 30, 2019), appellate jurisdiction declined, 157 Ohio St. 3d 1524 (2019), cert. denied, 141 S. Ct. 305 (2020).

On November 30, 2020, Remillard filed the instant habeas corpus Petition, pleading the following grounds for relief:

> **Ground One**: Counsel was ineffective under the Sixth and Fourteenth Amendments of the U.S. Constitution in failing to File a Motion to Suppress documents/personal papers seized during a warrantless search of Remillard's bedroom.
>
> **Ground Two**: Counsel was ineffective under the Sixth and Fourteenth Amendments of the U.S. Constitution when he failed to object to erroneous jury instructions that denied Mr. Remillard a fair trial.
>
> **Ground Three**: The trial court should have given the requested instruction on accident and denied the appellant his right to a fair trial/complete defense under the Sixth and Fourteenth Amendments of the U.S. Constitution.

(Petition, ECF No. 1, PageID 17-33).

# Analysis

## The Constitutionality of the AEDPA

Remillard spends much of his Traverse arguing that the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), in part codified at 28 U.S.C. § 2254(d)(1), (d)(2), and (e), is unconstitutional (ECF No. 12, PageID 1116-36).

Remillard correctly situates adoption of the AEDPA in the aftermath of Timothy McVeigh's 1995 terrorist attack on the federal courthouse in Oklahoma City. But it was also adopted in the midst of the precipitate rise in violent crime in the United States in the 1990's. Popular opinion was sufficiently aroused that Bill Clinton could use support for the AEDPA as a campaign issue[1], just as Richard Nixon had used the slogan "Law and Order" in 1968. However, the political climate that supports adoption of an Act of Congress does not determine its constitutionality, however much that climate may have changed.

That said, the Magistrate Judge does not doubt the propriety of Petitioner's raising the constitutional issues presented by AEDPA or this Court's authority to decide them when called upon to apply that statute. *Marbury v. Madison*, 5 U.S. 137, 2 L. Ed. 60 (1803), applies at the District Court level as well as in the Supreme Court.

Analysis must begin with a strong presumption of constitutionality. The federal courts must pay great deference to Congress' view that what it has done is constitutional. *Rostker v. Goldberg,* 453 U.S. 57, 64 (1981); *Fullilove v. Klutznick*, 448 U.S. 448, 472 (1980); *Columbia*

---

[1] The AEDPA was signed April 24, 1996, in the midst of Clinton's re-election campaign. He signed the Prisoner Litigation Reform Act, which severely restricted the ability of the incarcerated to bring civil rights claims in federal court, the same week.

*Broadcasting System, Inc., v. Democratic National Committee*, 412 U.S. 94, 102 (1973); *United States v. Five Gambling Devices,* 346 U.S. 441, 44 (1953); *Fairbank v. United States*, 181 U.S. 283 (1901).

The particular portions of AEDPA to which Remillard objects are its requirements that federal courts defer to reasonable state court applications of Supreme Court precedent (28 U.S.C. § 2254(d)(1)) and reasonable determinations of fact (§ 2254(d)(2)). Instead, he essentially asserts habeas petitioners have a constitutional right to a federal court *de novo* decision on law and fact:

> the application of the federal Constitution in the habeas corpus context must not depend on the State where the criminal trial took place or the State's judiciary and its interpretation of the federal Constitution. The habeas petitioner has a U.S. citizenship right to the protections of the Fourteenth Amendment to the federal Constitution being applied correctly to the correct facts of his or her case regardless of the particular State where he is seeking vindication of his federal constitutional rights.

(Traverse, ECF No. 12, PageID 1123).

As to § 2254(e), he asserts "If a federal judge needs to hold an evidentiary hearing to determine the relevant facts in deciding whether the federal Constitution has been violated, then he or she can not [sic] be retrained [sic] by a State judge's factual findings." (ECF No. 12, PageID 1136).

Remillard cites no controlling precedent that supports his position. He principally relies on the dissent of Ninth Circuit Judge Lipez from denial of *en banc* rehearing in a habeas case where the panel decision had applied § 2254(d)(1) to (1) limit the sources of law from which federal judges could draw constitutional principle to Supreme Court precedent and (2) limit federal judges ability to overturn state court application of that precedent to cases where the application was objectively unreasonable. *Evans v. Thompson,* 524 F.3d 1 (9th Cir. 2008). Judge Lipez noted the agreement of judges from other circuits:

> Judges Pregerson, Gould, Paez, and Berzon, see *Crater v. Galaza,* 508 F.3d 1261 (9th Cir. 2007), a dissent from the denial of rehearing en banc by Judge Martin, and joined by Judges Daughtrey, Moore, Cole, and Clay, see *Davis v. Straub*, 445 F.3d 908 (6th Cir. 2006), a concurring opinion by Judge Noonan, see *Irons v. Carey*, 505 F.3d 846, 854 (9th Cir. 2007), and a dissenting opinion of Judge Ripple, joined by Judge Rovner, see *Lindh v. Murphy*, 96 F.3d 856, 885 (7th Cir. 1996).

524 F.3d at 2. While the independence of the federal judiciary and its importance in maintaining the supremacy of federal law is eloquently defended in these opinions, none of them was able to command a majority of the circuit court in question which held these provisions to be constitutional. §§ 2254(d)(1), (2), and (e) have been on the books for twenty-five years and are applied literally hundreds of times a week, but no federal court has declared them unconstitutional.

Aside from authoritative precedent, on what sources should this Court draw in determining the constitutionality of these three statutes? Remillard, although he discourses broadly on history, provides no in-point evidence, required by Originalist theory, of how the Framers' generation understood the Suspension Clause or separation of powers or the Reconstruction Congress understood the Thirteenth or Fourteenth Amendments as they apply to habeas corpus.

Remillard has not overcome the presumption of constitutionality that attaches to Congressional legislation. The balance of this Report will apply the AEDPA as enacted as both the Sixth Circuit and the Supreme Court have done since its enactment.


**Ground One: Ineffective Assistance of Trial Counsel: Failure to File Motion to Suppress**


In his First Ground for Relief, Remillard claims his trial attorney provided constitutionally ineffective assistance when he failed to file a motion to suppress documents seized from Remillard's home without a warrant.

Respondent concedes this claim is preserved for merits review by this Court, but asserts the Court should defer to the decision on the claim by the Fifth District on direct appeal (Return, ECF No. 9, PageID 1089, et seq.).  This claim was the First Assignment of Error on direct appeal and the Fifth District decided it as follows:

[*P33]  A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

[*P34]  In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley*. *Knowles v. Mirzayance,* 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251 (2009).

[*P35]  Appellant first asserts that trial counsel was ineffective for failing to file "a motion to suppress documents seized during a warrantless search of Appellant's bedroom. "[F]ailure to file a suppression motion does not constitute per se ineffective assistance of counsel." *Kimmelman v. Morrison,* 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). "To demonstrate ineffective assistance for failing to file a motion suppress, a defendant must show: (1) a basis for the motion to suppress; (2) that the motion had a reasonable probability of success; and (3) a reasonable probability that suppression of the challenged evidence would have changed the outcome at trial." *State v. Clark,* 6th Dist. Williams No. WM-09-009, 2010-Ohio-2383, ¶ 21. An ineffective assistance of counsel claim will be rejected when counsel's failure to file a suppression motion "was a tactical decision, there was no reasonable probability of success, or there was no prejudice," or where counsel could have reasonably decided that filing such a motion would have been futile, even if there is evidence in the record to support such a motion. *State v. White,* 4th Dist. Washington Nos. 17CA10& 17CA11, 2018-Ohio-18, ¶ 39, citing *State v. Nields,* 93 Ohio St.3d 6, 2001-Ohio-1291, 752 N.E.2d 859. *State v. Phelps,* 5th Dist. Delaware No. 18 CAA 02 0016, 2018-Ohio-4738, ¶ 13.

[*P36]  We first consider whether the officer's entry in the home was permitted. The Deputies reasonably suspected Appellant may have committed or would attempt to commit suicide based upon the information provided by Mr. Daubenspeck, and relied upon this concern to force entry into the home. "Breaking into a home by force is not illegal if it is reasonable in the circumstances. The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent exigency or emergency." *State v. Burgess* (Nov. 4, 1999), 5th Dist. No. 99-CA-0035, 1999 Ohio App. LEXIS 5271, quoting *Wayne v. United States*, 318 F.2d 205, 212, 115 U.S. App. D.C. 234 (D.C.Cir.1963).

> "The question becomes whether the State's interest in sweeping a residence upon responding to a dispatch for possible suicide and possible weapons is sufficient to warrant this intrusion and whether the search policy in question is "reasonably related in scope to the circumstances which justified the interference in the first place."

*Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

[*P37]  We find that the instant search was justified when tested by both criteria from *Terry*. The government has a legitimate interest in conducting a search of a residence when they are called to that residence as a result of the receiving reliable evidence that the Appellant may be suicidal and has access to weapons, and that such an interest is more than sufficient to justify this search. *State v. Bethel*, 5th Dist. Tuscarawas No. 10-AP-35, 2011-Ohio-3020, ¶21. While suicide is not a crime, police officers have a duty to prevent citizens from harming themselves and were performing this duty when they entered appellant's home. Based on the deputies' testimony, we conclude that the exigent circumstances were sufficient to justify the entry into appellant's home. *State v. Neptune*, 4th Dist. Athens No. 99CA25, 2000 Ohio App. LEXIS 1884, 2000 WL 502830, *5.

[*P38]  While the warrantless entry into the home was justified, Appellant argues that the warrantless seizure of Exhibit 7 impermissibly extended what should have been a limited search for Appellant and that trial counsel was ineffective for failing to present that argument. The deputies were looking for Appellant, Appellant's body or any evidence that could lead to discovering Appellant's location. Deputy Baker saw the note, in plain view, on a table in the upstairs bedroom. He read a few lines, concluded it was a suicide

7

note and took the note to Deputy Wolf. Deputy Wolf reviewed [the] entire note for evidence that might lead to the discovery of Appellant, his plans or whereabouts. Once they read the entire note, the deputies realized that they may be investigating a homicide as well as a suicide.

[*P39] The deputies did not know in advance the location of incriminating evidence and intend to seize it, relying on the plain view doctrine only as a pretense. *Coolidge v. New Hampshire*, 403 U.S. 443, 469-71, 91 S.Ct. 2022, 2040, 29 L.Ed.2d 564 (1971). The discovery of the incriminating content of the note was the inadvertent result of responding to the exigent circumstances, the threat that the Appellant had committed suicide. *Id*. The plain view exception to the warrant requirement was satisfied in this case because the initial intrusion and review of the content of Exhibit 7 was supported by exigent circumstances, the incriminating evidence in Exhibit 7 was inadvertently discovered, it was immediately apparent that Exhibit 7 was evidence of a crime and the totality of the circumstances supported a conclusion that there was probable cause to justify the seizure. *State v. Mowbray*, 72 Ohio App.3d 243, 247, 594 N.E.2d 626 (4th Dist.1991).

[*P40] We hold that the facts do not support Appellant's contention that trial counsel was ineffective for failing to file a motion to suppress documents removed from the residence because it is not probable that such a motion would have succeeded and it would have been reasonable for counsel to decide, as a matter of trial strategy, that pursuing such a motion would have been futile.

[*P41] Appellant's first assignment of error is overruled.

*State v. Remillard, supra.*

It is clear from this passage in its opinion that the Fifth District decided Remillard's first ineffective assistance of trial counsel claim, brought forward in Ground One, on the merits. When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002);

*Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. §

2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceedings[2].

The governing standard for ineffective assistance of counsel is found in *Strickland v.*

*Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so
> defective as to require reversal of a conviction or death sentence has
> two components. First, the defendant must show that counsel's
> performance was deficient. This requires showing that counsel was
> not functioning as the "counsel" guaranteed the defendant by the
> Sixth Amendment. Second, the defendant must show that the
> deficient performance prejudiced the defense. This requires
> showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable. Unless a
> defendant makes both showings, it cannot be said that the conviction
> or death sentence resulted from a breakdown in the adversary
> process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both

deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing

*Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly
> deferential. . . . A fair assessment of attorney performance requires
> that every effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of counsel's challenged
> conduct, and to evaluate the conduct from counsel's perspective at
> the time. Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption that counsel's
> conduct falls within a wide range of reasonable professional
> assistance; that is, the defendant must overcome the presumption

---

[2] Remillard states at several points in his Traverse that § 22454(d) requires only a good faith effort by the state courts. Not so; it requires an objectively reasonable determination of the facts and an objectively reasonable application of Supreme Court precedent. Unreasonable decisions of fact or law are reversible regardless of the good faith of the state court judge in question.

that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011). The Fifth District cited *Strickland* as the controlling Supreme Court precedent and the Court presumes the constitutionality of the AEDPA. Thus to prevail on his First Ground for Relief, Remillard must demonstrate that the Fifth District's

decision is an unreasonable application of *Strickland*.

In his Traverse Remillard concedes that exigent circumstances justified the police officers in entering his residence without a search warrant because of what they had been told about a possible suicide (ECF No. 12, PageID 1140).

> The police reasonably believed a suicide may have taken place. The crux of the matter is whether law enforcement could seize Mr. Remillard's handwritten papers found on a table in his bedroom, read them and use them in the state's case in chief since law enforcement did not have a search warrant.

*Id.* There is apparently also no contention that the eight-page note was not found in plain view, to wit, it was "found on a table." At the time the officer picked up and read the note, officers were still responding to a possible suicide and had not yet found either the body of the victim or Remillard's body, alive or dead. Not all persons who commit suicide leave a note, but the practice is sufficiently common that a police officer encountering such a note in the open at the scene of a suspected suicide could reasonably suspect that the note was relevant to his inquiry. At that point in time, the exigent circumstances which had justified the officers in entering the house had not dissipated, as the Fifth District found. *Remillard, supra*, at ¶ 39. Under those circumstances the Fifth District found that a competent and diligent trial attorney might well have concluded a motion to suppress would have been futile.

The Magistrate Judge has no doubt that the note played an important role in convicting Remillard and therefore its suppression might well have affected the outcome. But Remillard does not suggest a reasonable basis on which it could have been suppressed, beyond generalities such as the Fourth Amendment protects personal papers.

Remillard relies heavily on *Caniglia v. Strom*, ___ U.S. ___, 141 S. Ct. 1596 (May 17, 2021). There the Supreme Court unanimously held that a freestanding caretaker exception to the

Fourth Amendment did not justify warrantless removal of firearms from a home, although they had allowed warrantless removal of firearms from an impounded vehicle in *Cady v. Dombrowski*, 413 U.S. 433 (1973). Officers did not remove the note in this case pursuant to any purported "caretaker" exception, but read it as a possible suicide note from the person on whose suicide they were checking. In any event, assuming *Caniglia* announced a new rule of criminal procedure, it does not apply retroactively to cases, such as this one, on collateral review. *Edwards v. Vannoy*, 593 U.S. ___, 141 S. Ct. 1547 (2021), modifying *Teague v. Lane*, 489 U.S. 288 (1989).

Remillard relies repeatedly on *Arizona v. Hicks,* 480 U.S. 321 (1987), although he never provides a citation to the published opinion. In *Hicks* the Supreme Court upheld suppression of evidence (expensive stereo equipment and the serials numbers on it) because moving the equipment to see the serial numbers was a seizure and investigating whether the equipment was stolen was unrelated to the reason the officer was in defendant's apartment. *Hicks*, which is not cited in *Caniglia*, would be relevant if the police officer here had begun to investigate possible crimes not related to the reasonable suspicion of suicide. He had not. He was still checking on the possibility of a suicide when he came instead upon the incriminating evidence of murder.

The Magistrate Judge concludes that the Fifth District's rejection of this claim is an objectively reasonable application of *Strickland* and is therefore entitled to deference. Alternatively, assuming 28 U.S.C. § 2254(d)(1) is unconstitutional and this Court must decide the First Ground *de novo*, this Court should reach the same conclusion as the Fifth District: the exigent circumstances which justified entering the home and reading the note found in plain view had not dissipated. The notion that the Fourth Amendment required the officers to stop their attempts to prevent a suicide until they could get a search warrant to read the note is not warranted by Fourth Amendment precedent. Ground One should be dismissed with prejudice.

**Ground Two:  Ineffective Assistance of Counsel:  Failure to Object to Jury Instructions**


In his Second Ground for Relief, Remillard claims his trial attorney provided ineffective assistance of trial counsel when he failed to object to jury instructions.  In the Traverse Remillard argues this claim very generally:  "The jury instructions given in this case were filled with errors that could have been corrected if brought to the attention of the trial judge."  Because the same attorney represented Remillard on direct appeal and continues to represent him here, the Magistrate Judge reads the Traverse as arguing the same errors in the jury instructions (and counsel's failure to object) as were argued to the Fifth District.  Any other more expansive reading of the Traverse would effectively excuse any procedural default Remillard made in presenting these claims to the state court.

Remillard's claim of ineffective assistance of trial counsel for failure to object was presented as his Second Assignment of Error on direct appeal and decided by the Fifth District as follows:

> [*P42]  Appellant argues in his second assignment of error that trial counsel was ineffective for failing to object to an erroneous jury instructions and that failure ultimately denied him a fair trial. Appellant contends that the errors involve the introduction to the issue of lesser included offenses and an error in the definition of murder.

> [*P43]  With regard to the issue of lesser included offenses, Appellant argues that trial counsel was obligated to object to the use of the following instruction:

>> However, if you find that the state has failed to prove beyond a reasonable doubt all the essential elements of murder, then your verdict must be not guilty of the murder charge, and in that event you will continue your deliberations to decide whether the state has proven beyond

a reasonable doubt all the essential elements of one of the lesser included offenses which I'm going to define for you.

[*P44] Appellant contends that the first clause of this instruction should read "If you find that the state failed to prove beyond a reasonable doubt any of the essential elements of the offense of murder ***" (emphasis added.). The only difference between the two instructions is the use of the word "all" in the instruction read by the trial court in place of the word "any." Appellant contends that the alteration of that one word misled the jury to believe that if the state proved any element beyond a reasonable doubt, they could not consider a lesser included offense. We find that Appellant's interpretation of the instruction strained and untenable because there is no practical difference between the state failing to prove any element and the state failing to prove all elements of murder. While the terms are different, the instructions impose the same burden on the state and convey the same message to the jury—if the state failed to convince the jury of each element of the charge of murder beyond a reasonable doubt, the jury may consider a lesser included offense.

[*P45] The paragraph that immediately follows the offending instruction reinforces its meaning:

Similarly, if all of you are unable to agree on a verdict of either guilty or not guilty of the murder charge, then you will continue your deliberations to decide whether the state has proven beyond a reasonable doubt all of the essential elements of the one of the lesser included offenses which I will now define for you.

[*P46] We hold that this instruction was not erroneous and trial counsel was not ineffective for not objecting to its use.

[*P47] Appellant next contends that trial counsel was ineffective for failing to object to an erroneous definition of murder read into the record by the trial court when it instructed the jury. The trial court did include a reference to "purpose to inflict bodily harm" that is not a part of the definition of murder within jury instructions. This error occurred only at one location in the record of the trial court's reading of the instructions. The record does not contain a copy of the instructions that were given to the jury to read along with the judge's narration or reveal whether the instructions were taken by the jury into the jury room. The relevant charge as read to the jury states:

> If after considering all of the evidence you're convinced
> beyond a reasonable doubt that the defendant had a purpose
> to kill or inflict bodily harm on Nickolas Remillard, you
> must return a verdict of guilty on the murder charge. If after
> considering all of the evidence you are not convinced
> beyond a reasonable doubt that the defendant acted either
> purposely, recklessly or negligently in causing the death of
> Nickolas Remillard, you must return a verdict of not guilty
> on the murder charge and both of the lesser included
> offenses as well as the firearm specification. (Emphasis
> added.)

*State v. Remillard, supra.*

With respect to the first instruction to which it is alleged counsel should have objected, the Magistrate Judge agrees with the Fifth District: failure to prove all of the elements beyond a reasonable doubt is logically and linquistically equivalent to failure to prove any of the elements beyond a reasonable doubt. In any event, the Fifth District concluded that there was no error in the instruction given and thus there was nothing to which to object.

Petitioner cites no federal court authority to the contrary. He relies on *Miller v. State*, 318 P.3d 155 (Kan. 2014), an opinion of the Supreme Court of Kansas. There the court held that appellate counsel rendered ineffective assistance under the Sixth Amendment by failing to challenge an incorrect written jury instruction that diluted the State's burden of proof by directing the jury to acquit if it had a reasonable doubt as to "each," rather than "any," of the elements the State was required to prove. The linguistic difference between the instruction here and that in *Miller* is evident: requiring the jury to have a reasonable doubt as to each element in order to acquit is equivalent to telling them they must have such doubt on every element. In this case the trial judge said the jury must acquit if the State fails to prove all elements/any element beyond a reasonable doubt. Because the instruction was not erroneous, it was not ineffective assistance of trial counsel to fail to object to it.

The second failure to object of which Petitioner complains was also a part of his Second

Assignment of Error, decided by the Fifth District as follows:

[*P48]  The inclusion of a reference to "bodily harm" [in the stated definition of murder] is incorrect as that phrase does not appear in the definition of murder. We review this issue by considering whether this single error prejudiced Appellant.

[*P49]  The general rule is that an erroneous instruction does not necessarily mislead a jury. *Cleveland Elec. Illum. Co. v. Astorhurst Land Co.*, 18 Ohio St.3d 268, 274-275, 18 Ohio B. 322, 480 N.E.2d 794 (1985).

> "Reversible error ordinarily cannot be predicated upon one paragraph, one sentence or one phrase of the general charge. As this court held, in paragraph six of the syllabus of *Flynn v. Sharon Steel Corp.* 142 Ohio St. 145, 50 N.E.2d 319 (1943):

> 'Where complaint is made as to a portion of the charge of the court, a reviewing court will consider all of the charge upon the particular subject complained of to determine whether prejudicial error has been committed against the party complaining.'

If the general charge, considered as a whole, is not prejudicial to the objecting party, no reversible error results from a misstatement or ambiguity in a portion thereof. In paragraph eight of the syllabus in *Centrello v. Basky,* 164 Ohio St. 41, 128 N.E.2d 80 (1955), this court said:

> 'Even though a paragraph in a general charge taken by itself is improper and misleading, yet where considered in connection with the whole charge and the entire instruction of the court to the jury, it is apparent that no prejudicial error resulted, the judgment rendered on a verdict will not be reversed for such error.'

*State v. Porter,* 14 Ohio St.2d 10, 13, 235 N.E.2d 520 (1968) (Citations omitted.).

[*P52]  To conclude that a party's substantial rights were materially affected, an appellate court must find that the jury charge was so misleading and prejudicial as to result in an erroneous verdict. *Cleveland Elec. Illum. Co. v. Astorhurst Land Co., supra.* Making

such a determination requires a "thorough review of the entire transcript of proceedings before the trial court." *Hampel v. Food Ingredients Specialties, Inc.,* 89 Ohio St.3d 169, 186, 2000-Ohio-128, 729 N.E.2d 726.

 [*P53]  After a thorough review of the transcript in the case at bar, we find that focus of both Appellee and Appellant in this case was the *mens rea* of Appellant. The records contains uncontradicted evidence that Appellant was in physical possession of the revolver that discharged twice, one bullet punctured the wall, one bullet entered the victim's head, lodged in his arm and caused his death. The victim's body was dragged from the home and concealed in the murky water of the swimming pool. During closing argument defense counsel conceded that Appellant shot the victim and that he did "cause Nick's death." Appellant's trial counsel selected the strategy of attacking the only issue that could be challenged:

> "And the only question becomes what was the intent. Was it intent to kill. Was it negligence. Was it recklessness. Those are the only questions at that point."

> "And that is what we ask you to do, folks, to listen and analyze what Kevin said and the context of his state of mind of what he was doing, what was going through his head and his body on that Saturday."

 [*P54]  Our review of the potential prejudice caused by the instruction must be considered in the context of the argument that the sole issue to be determined was the mens rea of Appellant.

 [*P55]  The reference to bodily harm appears only once in the record; otherwise the definition of murder and the relevant burden of proof is described correctly in the instructions and clearly stated that "purpose to cause death is an essential element of the crime of murder." The instructions for the lesser included offenses of reckless homicide and negligent homicide referenced causing the death of Nickolas Remillard with the pertinent distinction being the mental state of the Appellant. We are not convinced that the inclusion of the reference to physical harm was so misleading and prejudicial as to result in an erroneous verdict, but that is not the question we are addressing. We need only consider whether trial counsel was ineffective for failing to object to the instruction. Considering the weight of the evidence against Appellant, and trial counsel's strategy to attack the issue of mens rea, we find that trial counsel could reasonably conclude that objecting to this instruction would distract from his argument. "The Ohio Supreme Court has stated "[w]e will

ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980)." *State v. Myers*, 97 Ohio St.3d 335, 362, 2002-Ohio-6658, 780 N.E.2d 186 (2002) as quoted in *State v. Elmore*, 5th Dist. Licking No. 2005-CA-32, 2005-Ohio-5940, ¶ 133. We will not second-guess the strategic decisions counsel made at trial even though appellate counsel now argue that they would have defended differently." *State v. Post*, 32 Ohio St.3d 380, 388, 513 N.E.2d 754 (1987) as cited in *State v. Mason*, 82 Ohio St.3d 144, 169, 1998-Ohio-370, 694 N.E.2d 932.

[*P56]  Appellant's second assignment of error is overruled.

*State v. Remillard, supra.*

Here the Fifth District concluded the instruction was erroneous because it included the phrase "inflict bodily harm."   The trial judge had given the correct definition of murder at other places in the general charge, but here he inserted words that are not proper to that definition.  The court thus turned to the question whether the incorrect charge had prejudiced Remillard, given the charge as a whole.

The proper standard for reviewing claims that allegedly ambiguous instructions caused jury confusion is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Jones v. United States,* 527 U.S. 373 (1999), *citing Estelle v. McGuire,* 502 U.S. 62 (1991), and *Victor v. Nebraska*, 511 U.S. 1 (1994).  "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil,* 541 U.S. 433, 437 (2004). To establish such a violation, a petitioner must show two things: (1) the trial court's misstep made the  instruction ambiguous; and (2) there is "a reasonable likelihood" (not just "a slight possibility") that the jury was actually misled. *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009); *Moody v. United States*, 958 F.3d 485 (6th Cir. 2020).  Here the Fifth District found that the parties had reduced the critical issue in

trial to *mens rea*. While the jury had to find for the State on every element beyond a reasonable doubt, the parties concentrated on the *mens rea* element. Petitioner does not contest the Fifth District's reading of where the critical issue was. Given that focus, "[c]onsidering the weight of the evidence against Appellant, and trial counsel's strategy to attack the issue of *mens rea*, we find that trial counsel could reasonably conclude that objecting to this instruction would distract from his argument." This is not an unreasonable inference as to counsel's reasoning. On the basis of that reasoning, it was not deficient performance to fail to make an objection. The Fifth District's conclusion on the Second Assignment of Error is a reasonable application of *Strickland* and therefore entitled to deference. Ground Two should therefore be dismissed with prejudice.

**Ground Three: Trial Court Error in Refusing Instruction on Accident**

In his Third Ground for Relief, Remillard contends the trial court should have given the instruction he requested on accident and that its failure to do so deprived him of his right to a complete defense.

Remillard argued this as his Third Assignment of Error and the Fifth District decided it as follows:

> [*P65] In Appellant's third assignment of error, he contends that the trial court erred by failing to include an instruction for "accident" as requested. While Appellant did submit an instruction for accident, it was rejected by the trial court as not supported by the record. Appellant's trial counsel stated: "Just could the record reflect that we did ask for an instruction on accident and the Court declined to give that instruction?" The trial court responded "so noted" and no further discussion regarding that instruction occurred.
>
> [*P66] Criminal Rule 30(A) states in relevant part that "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to

consider its verdict, stating specifically the matter objected to and the grounds of the objection." As we found in *State v. Rohaley*, 5th Dist. Stark No. 1998CA00092, 1998 Ohio App. LEXIS 6549, 1999 WL 4505, *7, counsel did not fully comply with Crim.R. 30(A) by stating the specificity of the nature of his request, or the grounds for the request. Therefore, we must find plain error to reverse."

[*P67] We apply the doctrine of plain error cautiously and only under exceptional circumstances to prevent a manifest miscarriage of justice. *Id.* In that regard, "[T]he test for plain error is stringent." *State v. Ellison*, 4th Dist. No. 16CA16, 2017-Ohio-284, 81 N.E.3d 853, ¶27. "To prevail under this standard, the defendant must establish that an error occurred, it was obvious, and it affected his or her substantial rights." *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 64. An error affects substantial rights only if it changes the outcome of the trial. Id. As noted we notice plain error only to prevent a manifest miscarriage of justice. *State v. Fouts*, 4th Dist. Washington No. 15CA25, 2016-Ohio-1104, 2016 WL 1071457, ¶ 59, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. The defendant carries the burden to establish the existence of plain error, unlike the situation in a claim of harmless error, where the burden lies with the state.

[*P68] In the case at bar we cannot find plain error. The general instructions clearly instructed jurors that the required *mens rea* was "purposeful" conduct that went beyond conduct considered to be an accident. If the jury believed defendant's accident defense, it would have been required to find him not guilty in accord with the instructions given. *State v. Smiley*, 8th Dist. Cuyahoga No. 03853, 2010-Ohio-4349. We also note that Appellant's trial counsel freely referred to the shooting as accidental or an accident. We do not find that the outcome of the trial would have been different or that there has been a manifest miscarriage of justice by the omission of the accident instruction.

[*P69] Appellant's third assignment of error is overruled.

*State v. Remillard, supra.*

Although the Fifth District's limitation of its review to plain error would support a procedural default defense, Respondent elects not to raise that defense, but to defend on the merits (Return, ECF No. 9, PageID 1102). The Warden contends that the Fifth District's decision requires

deference because it found, given the parties' focus on *mens rea*, that the trial court's clear instruction that the killing must have been purposeful, coupled with defense counsel's strong argument for a finding of accident, which went unchallenged by either the trial judge or the prosecutor, was sufficient to present the *mens rea* element to the jury.

Remillard first argues that "The Ohio court of appeals did not decide this issue on the federal constitutional issues presented. De novo review is required" (Traverse, ECF No. 12, PageID 1148). The Magistrate Judge disagrees. Remillard's Third Assignment of Error pleaded that failure to give the requested accident instruction violated his rights to a fair trial under the Sixth and Fourteenth Amendments (Appellant's Brief, State Court Record, ECF No. 8, PageID 108). He argued the Assignment in terms of both State and federal law. *Id.* at PageID 108-11.

A state court decision can constitute an "adjudication on the merits" entitled to deference under 28 U. S.C. § 2254(d)(1) even if the state court does not explicitly refer to the federal claim or to relevant federal case law. In *Harrington v. Richter*, 562 U.S. 86 (2011), the Supreme Court held:

> By its terms § 2254(d) bars relitigation of any claim "adjudicated on the merits" in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2). There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. *See Chadwick v. Janecka*, 312 F.3d 597, 605-606 (CA3 2002); *Wright v. Secretary for Dept. of Corrections*, 278 F.3d 1245, 1253-1254 (CA11 2002); *Sellan v. Kuhlman*, 261 F.3d 303, 311-312 (CA2 2001); *Bell v. Jarvis*, 236 F.3d 149, 158-162 (CA4 2000) (en banc); *Harris v. Stovall*, 212 F.3d 940, 943, n. 1 (CA6 2000); *Aycox v. Lytle*, 196 F.3d 1174, 1177-1178 (CA10 1999); *James v. Bowersox*, 187 F.3d 866, 869 (CA8 1999). And as this Court has observed, a state court need not cite or even be aware of our cases under § 2254(d). *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002)

> (per curiam). Where a state court's decision is unaccompanied by an
> explanation, the habeas petitioner's burden still must be met by
> showing there was no reasonable basis for the state court to deny
> relief. This is so whether or not the state court reveals which of the
> elements in a multipart claim it found insufficient, for § 2254(d)
> applies when a "claim," not a component of one, has been
> adjudicated.

*Id.* at 98. "This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decisions can be deemed to have been 'adjudicated on the merits.'" *Id.* at 100. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Brown v. Bobby*, 656 F.3d 325, 329 (6th Cir. 2011), *quoting Harrington,* 131 S. Ct. at 784-85.

There is no need to rely on the *Harrington* presumption here. Remillard plainly presented his federal claim as his Third Assignment of Error and the Fifth District denied it on the merits. Thus Remillard's Third Ground for Relief is not entitled to *de novo* consideration[3]. Rather, this Court must defer to that decision unless it is an objectively unreasonable application of Supreme Court precedent.

There is no federal constitutional right to have a trial court give an instruction that has been requested merely because a defendant requests it and Petitioner does not argue for such a right. Instead he asserts "If a requested instruction contains a correct statement of the law and is appropriate to the facts, the instruction must be included, at least in substance, in the charge." (Traverse, ECF No. 12, PageID 1149, citing *State v. Nelson*, 36 Ohio St.2d 79 (1973), paragraph one of the syllabus, overruled on other grounds, *State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982)). But that is a rule of Ohio law, not federal constitutional law.

---

[3] Again continuing to presume the constitutionality of AEDPA.

Remillard's principal argument is that refusal to give an accident instruction deprived him of his right to present a complete defense (Traverse, ECF No. 12, PageID 1147, citing *Mathews v. United States*, 485 U.S. 58 (1988)).  In *Mathews* the Supreme Court held the defendant, under the facts of that case, was entitled to an instruction on the entrapment defense, but the circuit court of appeals should decide in the first instance whether the evidence supported such a defense.

*Mathews* was a federal prosecution for bribery.  In reaching its decision, the Court did not rely on the Constitution, but on interpretation of the bribery statute and the Federal Rules of Criminal Procedure.  The concept of "complete defense" is not discussed in the opinions.

A fair opportunity to present a defense in a criminal case is a constitutional right.  *Baze v. Parker,* 371 F.3d 310, 323 (6th Cir. 2004), *citing Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  Presenting relevant evidence is integral to that right; exclusion of assertedly relevant evidence is the issue on which most "complete defense" constitutional cases turn.  See *Taylor v. Illinois*, 484 U.S. 400, 409-11 (1988); *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973); *Wynne v. Renico*, 606 F.3d 867, 870 (6th Cir.  2010) *quoting United States v. Scheffer*, 523 U.S. 303, 308 (1998).

Remillard cites no Supreme Court or for that matter circuit court decisions in which refusal to give a requested instruction was found to violate the constitutional right to present a complete defense.  In *Barker v. Yukins,* 199 F.3d 867 (6th Cir. 1999), the only Sixth Circuit case cited, the issue was not refusal to give an instruction, but the correct claim that the instruction of self-defense actually given in a rape case misstated (and overstated) what a defendant needed to prove to establish that defense.  In this case the trial judge correctly instructed on the required *mens rea* (purposeful) and allowed defense counsel to argue Remillard's accident theory of the case.

Remillard has not shown that the Fifth District's decision on his Third Assignment of Error is contrary to or an objectively unreasonable application of Supreme Court precedent.  His third

Ground for Relief should therefore be dismissed.

**Conclusion**

In accordance with the foregoing analysis it is respectfully recommended that the Petition herein be dismissed with prejudice.

Because the Sixth Circuit has not squarely ruled on the constitutionality of the AEDPA in the face of the challenges Petitioner makes and many eminent judges have reached opposite conclusions on this question, a certificate of appealability should be issued on the question of whether the AEDPA is constitutional in light of those challenges. *A fortiori,* Petitioner should be allowed to proceed on appeal *in forma pauperis*.

June 29, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.