# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

KEVIN REMILLARD,

                Petitioner,            :     Case No. 2:20-cv-6103

    - vs -                           District Judge Sarah D. Morrison
                                   Magistrate Judge Michael R. Merz

WARDEN, Noble
  Correctional Institution,

                                :
               Respondent.

# SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Objections by Respondent (ECF No. 15) and Petitioner (ECF No. 16) to the Magistrate Judge's Report and Recommendations ("Report," ECF No. 14) recommending that the petition be dismissed with prejudice but that a certificate of appealability be granted (ECF No. 14).  Under Fed.R.Civ.P. 72(b), each party had the opportunity to respond to the other's Objections not later than July 27, 2021, but neither party has filed such a response. District Judge Morrison has recommitted the case for reconsideration in light of the Objections (ECF No. 17).

**Petitioner's Objections**

### Standard of Review

 Petitioner begins by claiming that the standard of review by a District Judge of a Magistrate Judge's report and recommendations in a habeas case is *de novo,* with no distinction between findings of fact and conclusions of law (ECF No. 16, PageID 1183, relying on Habeas Corpus Rule 8(b) and *Thomas v. Arn*, 474 U.S. 140, 150, n. 8 (1985)). The Magistrate Judge concurs that a *de novo* standard applies to all objections in a case such as this where the Magistrate Judge is making findings of fact based on the State Court Record, instead of deciding credibility questions on the basis of live evidence.  Occasions for live testimony in habeas are vanishingly rare under *Cullen v. Pinholster*, 563 U.S. 170 (2011), and none has occurred in this case.

Petitioner next provides a summary of facts from his perspective (ECF No. 16, PageID 1184-85).  No record references are provided, despite S. D. Ohio Civ. R. 7.2(b)(5) which requires pinpoint citations to the electronic State Court Record for record references.  Petitioner then reminds the Court of general principles of federal habeas law without specific argument as to how they apply here (ECF No. 16, PageID 1185-88).

**Ground One: Ineffective Assistance of Trial Counsel: Failure to File Motion to Suppress**

In his First Ground for Relief, Remillard claims his trial attorney provided constitutionally ineffective assistance when he failed to file a motion to suppress documents seized from Remillard's home without a warrant.  The Report concluded the Fifth District Court of Appeals had decided this claim on the merits and that its decision was an objectively reasonable application

of the governing federal standard enunciated in *Strickland v. Washington,* 466 U.S. 668 (1984)(ECF No. 14, PageID 1159-65).

Petitioner objects that the Report relies on "too narrow" a reading of *Arizona v. Hicks,* 480 U.S. 321 (1987)(ECF No. 16, PageID 1188).  If that case's definition of "plain view" is properly applied, Petitioner asserts, it will be found that Remillard's papers seized by police and used in his prosecution, were not constitutionally seized. *Id.* at PageID 1188-91.

The relevant facts as found by the Fifth District Court of Appeals are as follows:  Remillard had a neighbor by the name of Roy Daubenspeck who talked with him frequently and provided him with transportation because Remillard had no vehicle of his own.  *State v. Remillard*, 2019-Ohio-3545, ¶ 4 (Ohio App. 5th Dist. Aug. 30, 2019).  Daubenspeck owned a .357 caliber revolver which he and Petitioner handled together on a number of occasions; Remillard knew where the gun and ammunition for it were stored in Daubenspeck's home. *Id.* at ¶ 5.

On June 11, 2017, Daubenspeck discovered in his driveway a stack of items from Remillard with a note that said "Nothing in world makes sense. Lack of sleep, constant pain, who knows, but I snapped. These things are yours, Kevin." *Id.* at ¶ 6.  He also discovered that the revolver and ammunition were missing. *Id.* After getting no answer at Petitioner's house or from Melanie Remillard, the owner of the house, he called 911 and the Knox County Sheriff responded. *Id.* First to arrive was Deputy Scott Baker who concluded from the note that Remillard could be suicidal. *Id.* at ¶ 7.

He asked Ms. Remillard to deal with the dogs in the house so he could enter safely and she did so. *Id.* at ¶¶ 7-8.  Deputy Wolfe arrived and together he and Baker entered the house "with the goal of locating Appellant and insuring that he and anyone else in the home was safe. They found the first floor in disarray but did not find any person or body." *Id.* at ¶ 8.

They then proceeded to the second floor and found the note that Remillard says should have been suppressed.  The note itself was in the open on top of a table and Deputy Baker noticed that the handwriting was similar to that in the note Remillard had left for Daubenspeck.  *Id.* at ¶¶ 8-9.  Deputy Baker then read the note which contained several mentions of Petitioner's having shot Nick Remillard. *Id.* at ¶ 9.  This led to the conclusion that a homicide rather than a suicide was involved and the note was turned over to a detective.  *Id.*

These are all findings of fact made by the Fifth District Court of Appeals from the trial court record.  Petitioner does not dispute these findings or, more relevantly, claim that they are unreasonable determinations in light of the evidence as would be required to overturn them under 28 U.S.C. § 2254(d)(2).  Instead, Petitioner claims that in light of these facts a motion to suppress would have been granted under the authority of *Arizona v. Hicks, supra*.

The facts in *Arizona v. Hicks* as found by the Supreme Court are these:  A bullet had been fired from one apartment into the apartment below.  This created exigent circumstances permitting police to enter the upstairs apartment.  Once inside, an officer saw expensive stereo equipment which seemed at odds with the general squalor of the apartment.  Suspecting that the equipment had been stolen, the officer moved the equipment without a warrant to recover serial numbers, which confirmed his suspicion.  480 U.S. 323-24.  The officers did not have probable cause to believe the equipment was stolen.  The Supreme Court held that the plain view doctrine could not sustain the search which happened when the equipment was moved to look for serial numbers.

This case is parallel to *Hicks* in that exigent circumstances justified entry in both cases, although the deputy sheriffs here also had the owner's consent and indeed cooperation in removing the dogs.  The exigent circumstance here was the officers' reasonable belief that Petitioner was suicidal.

4

In his Objections, Petitioner repeatedly argues that suicide is not a crime. But he nowhere disputes the authority, indeed the duty, of the police to intervene to prevent suicide if they can. And he does not dispute the factual finding of the Fifth District that that is what the deputies were doing inside the house until after they had read the note. Because they had not found a body, the exigent circumstances regarding suicide had not dissipated until they read the note, as the Report found (ECF No. 14, PageID 1164) and as the Fifth District found. *Remillard, supra*, at ¶ 39.

Remillard also does not dispute as a matter of fact that the note was plainly visible on top of a table in a place where the deputies had authority to be. Instead, he claims it was not in "plain view" within the meaning of *Hicks*. The Magistrate Judge again disagrees. The deputies did not have to move anything – open any drawers or cabinets or even look under a bed – to see the note. Because the exigent circumstances – fear of a possible suicide – had not dissipated and because it is very common to find a note from the victim in suicide cases, it was completely reasonable for the deputies to read the note in pursuit of their legitimate goal of preventing Petitioner from harming himself.

Without reading it, the deputies could not tell whether it was a suicide note, a confession, or perhaps an irrelevant grocery list. Indeed, no person can tell the import of a document without reading at least some of it. Once the reading occurred, the nature of the writing as at least in part a confession of incriminating facts and its nature as incriminating evidence of a homicide was patent.

Petitioner argues that the note was not contraband or "connected to a crime" and therefore could not be seized without a warrant (Objections, ECF No. 16, PageID 1190). The Magistrate Judge agrees it was not contraband, but on its very face it was connected to a crime – the homicide of Nick Remillard.

5

In any event, the issue before this Court is not whether this seizure was or was not constitutional under *Hicks*.  Rather, the issue in Ground One is whether a motion to suppress was so clearly meritorious that it was ineffective assistance of trial counsel to fail to file one so that the Fifth District's decision that no such motion was required is an objectively unreasonable application of *Strickland*.  In other words, this Court's review of the decision not to seek suppression must be doubly deferential, first to the trial attorney and then to the Fifth District. *Woods v. Etherton*, 578 U.S. ___, 136 S. Ct. 1149 (2016), citing *Pinholster, supra*.; *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

On the basis of the undisputed facts recited above, the Magistrate Judge concludes it would have been error for the trial court to grant a motion to suppress.  It cannot be ineffective assistance of trial counsel for a lawyer to fail to file a motion which, had it been filed, should have been denied.  Accordingly, Ground One should be denied.

**Ground Two: Ineffective Assistance of Counsel: Failure to Object to Jury Instructions**

In his Second Ground for Relief, Remillard claims his trial attorney provided ineffective assistance of trial counsel when he failed to object to jury instructions.

The Report concluded that the Fifth District had decided this claim on the merits and its decision was not an objectively unreasonable application of clearly established Supreme Court precedent (ECF No. 14, PageID 1168-72).

Remillard objects that neither the Fifth District nor the Report addressed all the jury instruction errors which were made and should have been objected to (Objections, ECF No. 16, PageID 1192).  He then specifies

(1) the improper "acquit first" jury instructions;

(2) whether Mr. Remillard was denied his right to present a complete defense due to the faulty jury instructions and counsel's ineffectiveness in submitting to the court some of the faulty instructions and failing to object to other clearly erroneous jury instructions that cold [sic] have easily been corrected;

(3) "the Court required the State to fail to prove **all** of the elements before a not guilty verdict could be returned on Murder, count 1. (TR 687; Doc.#8-4, PageID# 1023) In that event, the trial court instructed, you will continue deliberations to the lesser included offenses. Mr. Remillard objects to the Magistrate's failure to address this claim. Properly Doc.#14, PageID #1166-1172."

(4) "The trial court also gave two different definitions of Murder."

At the beginning of the discussion of Ground Two, the Report concluded the jury instruction error claim made in the Traverse was "very general." (ECF No. 14, PageID 1166).  In order to avoid finding some of the jury instruction sub-claims procedurally defaulted, the Report limited itself to analyzing those claims which had in fact been made to the Fifth District. *Id.*  The Objections do not respond to this point, but argue there are a number of jury instruction errors which the Fifth District did not decide on the merits and the Report also did not address.

The Fifth District found that the instruction errors of which Remillard was complaining in his Second Assignment of Error were "the introduction to the issue of lesser included offenses and an error in the definition of murder."  *Remillard, supra*, ¶ 42.  As to the lesser included offense issue, the Fifth District decided that question on the merits, found no error, and therefore found no ineffective assistance of trial counsel in failing to object. *Id.* at ¶¶ 43-46.  The Report agreed (ECF No. 14, PageID 1168).

As to the definition of murder instruction, the Fifth District found that at one place in the instructions the trial court had given the correct instruction and at another point he had incorrectly inserted "or inflict bodily harm" in the definition.  The Fifth District, having reviewed the whole

trial transcript and the jury charge as a whole, found that the jury was not likely to have been

misled, because the key issue on which the parties focused was Remillard's *mens rea*.  That is,

there was apparently no doubt that he had fired the shot that killed Nick; the question was whether

he did so intending to cause Nick's death or only did so recklessly or negligently.  *Remillard,*

*supra,* at ¶¶ 48-56.  The Report concluded that the Fifth District had applied the correct federal

standard for review of ambiguous jury instructions and therefore had applied *Strickland* in an

objectively reasonable manner to find no ineffective assistance of trial counsel (ECF No. 14,

PageID 1172).

Regarding the "acquit first" instruction, Remillard devoted only the following paragraph

to this claim on direct appeal:

> There were also problems with the "acquit first" instructions before
> a lesser included offense, could be considered.  See *State v. Thomas*,
> 40 Ohio St 3d 213, syllabus 3 (1981). The court required an acquittal
> on Murder before considering the lesser included offenses. (TR.
> 687, 688).

(Appellant's Brief, State Court Record ECF No. 8, PageID 107).  Petitioner is correct that the Fifth

District did not explicitly address this claim.  However, it was presented to the Fifth District which

considered the Second Assignment of Error as a whole and found no error.  When a state court

rules against a defendant in an opinion that rejects some of the defendant's claims but does not

expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the

federal claim was adjudicated on the merits.  *Johnson v. Williams*, 568 U.S. 289 (2013).  Here the

Second Assignment of Error raised the federal claim that Remillard received ineffective assistance

of trial counsel because of his attorney's failure to object to certain jury instructions.  The Fifth

District considered that claim as a whole and gave it lengthy discussion, albeit not explicitly

treating the "acquit first" instruction.  Under *Johnson*, the Court must presume the Fifth District

decided this sub-claim on the merits.  The question then becomes whether that decision is entitled

to deference under 28 U.S.C. § 2254(d)(1).

In his Traverse, Remillard cites no United States Supreme Court precedent prohibiting an

"acquittal first" instruction of the sort given here.[1]  His only cited authority is *State v. Thomas,*

*supra*.  Paragraph 3 of the syllabus in *Thomas* reads:

> 3. A jury must unanimously agree that the defendant is guilty of a
> particular criminal offense before returning a verdict of guilty on
> that offense. If a jury is unable to agree unanimously that a
> defendant is guilty of a particular offense, it may proceed to consider
> a lesser included offense upon which evidence has been presented.
> The jury is not required to determine unanimously that the defendant
> is not guilty of the crime charged before it may consider a lesser
> included offense. (*State v. Muscatello* [1977], 57 Ohio App. 2d 231,
> 11 O.O. 3d 320, 387 N.E. 2d 627, paragraph three of the syllabus,
> adopted.)

The instruction complained of was

> [I]f you find that the state has failed to prove beyond reasonable
> doubt all the essential elements of murder, then your verdict must
> be not guilty of the murder charge, and in that event you will
> continue your deliberations to decide whether the state has proven
> beyond reasonable doubt all the essential elements of one of the
> lesser included offenses which I'm going to define for you.

(Trial Transcript, State Court Record, ECF No. 8-4, PageID 1023).

All Remillard told the Fifth District and this Court is that "there are problems" with this

instruction.  He never explains, in that court or this, what the "problems" are or what a correct

instruction would be.

The *Thomas* Court adopted what has been called a modified "hung jury" approach.  In *Beck*

*v. Alabama,* 447 U.S. 625 (1980), Supreme Court disapproved state law which forbade any

instruction on lesser included offenses in a capital case, but did not adopt the hung jury approach

---

[1] Indeed, this paragraph of the Traverse is a verbatim copy of the same paragraph in Appellant's Brief on direct appeal.

as required.  *United States v. Tsanas*, 572 F.2d 340 (2nd Cir. 1978), discusses advantages to both sides from either approach.  While the instruction given here may not have been a precise instantiation of the modified hung jury approach, the Fifth District's conclusion that the instruction as a whole was not misleading is entitled to deference. Given the subtlety of the distinction, Remillard has not shown his attorney performed deficiently when he did not interrupt the instructions and propose some different – here unspecified – instruction.

As to Ground Two, this leave Remillard's objection that faulty instructions denied him his right to present a complete defense (ECF No. 16. PageID 1196, relying on *Mathews v. United States*, 485 U.S. 58 (1988)).  A fair opportunity to present a defense in a criminal case is a constitutional right.  *Baze v. Parker,* 371 F.3d 310, 323 (6th Cir. 2004), *citing Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  But the Supreme Court has never held that an error in jury instructions violates the right to present a complete defense.  *Mathews* certainly does not do so.  There the Supreme Court held that when the evidence presented in a particular federal criminal trial would permit a finding of entrapment, a defendant was not required to admit the underlying crime before presenting evidence of entrapment.

Remillard also relies on *Stevenson v. United States*, 162 U. S. 313 (1896).  There the Supreme Court held that Stevenson had presented sufficient evidence to be entitled to a lesser included instruction as a matter of federal criminal practice.  The case does not discuss the constitutional concept of entitlement to present a "complete defense."  Remillard's "complete defense" argument on Ground Two is without merit.

The Magistrate Judge again recommends that Ground Two be dismissed with prejudice.

**Ground Three: Trial Court Error in Refusing An Instruction on Accident**

In his Third Ground for Relief, Remillard contends the trial court erred when it did not give the instruction he requested on accident and that its failure to do so deprived him of his right to a complete defense. Because trial counsel did not object before the jury retired in the manner required by Ohio law[2], the Fifth District reviewed this claim under a plain error standard and rejected it on the merits. Rather than relying on Remillard's procedural default, Respondent defended this claim on the merits in the Return and the Report concluded the Fifth District's decision of the claim was entitled to deference under 28 U.S.C. § 2254(d)(1)(ECF No. 14, PageID 1174-77).

Remillard first asserts the Magistrate Judge did not discuss the facts underlying the accident defense (Objections, ECF No. 16, PageID 1197). Then he gives a recitation of what he regards as the relevant facts, citing his own testimony as a whole, rather than pointing the Court to testimony supporting particular alleged facts *Id.* at PageID 1199, citing Trial Transcript, State Court Record, ECF No. 8-4, PageID 906-44. Remillard argues denial of the instruction violated his right to present a complete defense, relying again on *Mathews, supra*; and *Stevenson, supra.*

The Report concluded Remillard was not entitled to *de novo* consideration of his Third Ground for Relief because it had been clearly presented as a constitutional claim to the Fifth District and decided by that court on the merits (ECF No. 14, PageID 1175). The question before this Court, then, is whether the Fifth District's decision on this claim was contrary to or an objectively unreasonable application of clearly established law as embodied in the holdings of decisions of the United States Supreme Court. 28 U.S.C. § 2254(d)(1). "We have explained that

---

[2] Ohio law requires that when a trial judges fails to deliver a requested instruction, the omission must be brought to his or her attention before the jury retires. Note that counsel's failure to renew the request was not raised as a claim of ineffective assistance of trial counsel on appeal.

'clearly established Federal law' for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." *Woods v. Donald*, 575 U.S. 312 (2015), quoting *White v. Woodall*, 572 U. S. 415, 419 (2014).  See also *Howes v. Fields,* 565 U.S. 499, 505, (2012); *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

> Remillard's Objections criticize the Report for not analyzing the following line of cases:

> *Harris v. Alexander*, 548 F.3d 200 (2d Cir. 2008); *Jackson v. Edwards,* 404 F.3d 612 (2d Cir. 2005); *Davis v. Struck*, 270 F.3d 111 (2d Cir. 2001); *Barker v. Yukins*, 199 F.3d 867 (6th Cir. 1999); *Conde v. Henry*, 198 F.3d 734 (9th Cir. 2000). The Magistrate's R & R completely fails to address this line of authority and the petitioner objects. Doc. #14, Page ID #1172-1177.

(ECF No. 16, PageID 1200).  On their face, these are not decisions of the United States Supreme Court.  Contrary to Petitioner's assertion, the Report did analyze *Barker v. Yukins*, the only Sixth Circuit case cited, and noted it dealt not with a refusal to instruct, but with giving an erroneous instruction (Report, ECF No. 14, PageID 1176).  The Magistrate Judge recognizes that while the District Court must read Supreme Court decisions directly to determine their holdings, it must also obey the Sixth Circuit's readings of those holdings.  But *Barker* does not purport to read any Supreme Court decision in a way that is applicable here.

Remillard objects that "it is appropriate to rely on circuit court cases when they "merely reflect" U.S. Supreme Court cases."  (Objections, ECF No. 16, PageID 1200, citing *Parker v. Matthews*, 567 U.S. 37 (2012), and objecting that the Report does not follow *Parker*.  In *Parker* the Supreme Court reversed the Sixth Circuit's grant of habeas relief.  It began its *per curiam* decision by stating the Sixth Circuit's decision in the case

> is a textbook example of what the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) proscribes:  "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779, 130 S. Ct. 1855, 176 L. Ed. 2d 678, 691 (2010).

567 U.S. at 38.

In stark contrast to Petitioner's "consult circuit precedent" proposition, the Supreme Court

in *Parker* held:

> The Sixth Circuit also erred by consulting its own precedents, rather than those of this Court, in assessing the reasonableness of the Kentucky Supreme Court's decision. After quoting the governing standard from our decision in *Darden*, the Sixth Circuit added that it would "engag[e] in a two step inquiry to determine whether the prosecutorial misconduct rises to the level of unconstitutionality. 'To satisfy the standard . . . , the conduct must be both improper and flagrant.' 651 F.3d, at 505 (quoting *Broom v. Mitchell*, 441 F.3d 392, 412 (CA6 2006)). It went on to evaluate the flagrancy step of that inquiry in light of four factors derived from its own precedent: " '(1) the likelihood that the remarks . . . tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against [Matthews].' 651 F.3d, at 506 (quoting *Broom,supra,* at 412). And it stated that "the prosecutor's comments in this case were sufficiently similar to" certain comments held unconstitutional in its prior decision in Gall II, 231 F.3d 265 (CA6 2000), "that they rise to the level of impropriety." 651 F.3d, at 506.

> As we explained in correcting an identical error by the Sixth Circuit two Terms ago, see *Renico*, 559 U.S., at 778–779, 130 S. Ct. 1855, 176 L. Ed. 2d 678, 683circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. §2254(d)(1). It therefore cannot form the basis for habeas relief under AEDPA. Nor can the Sixth Circuit's reliance on its own precedents be defended in this case on the ground that they merely reflect what has been "clearly established" by our cases. The highly generalized standard for evaluating claims of prosecutorial misconduct set forth in *Darden* bears scant resemblance to the elaborate, multistep test employed by the Sixth Circuit here.

567 U.S. at 48-49. Only Supreme Court precedent counts under § 2254(d)(1).

For his claim that failure to give the requested accident instruction violated his right to

present a complete defense, Remillard relies on the following Supreme Court precedent: *Mathews,*

*supra*; *Stevenson, supra*; and *Cupp v. Naughten*, 414 U.S. 141 (1973). *Mathews* and *Stevenson*

are discussed above. In *Cupp* the Ninth Circuit had granted habeas relief where the trial judge had, in a case where the defendant did not testify, given an instruction that witnesses are presumed to testify truthfully. The Supreme Court reversed, holding:

> The giving of that instruction, whether judged in terms of the reasonable-doubt requirement in *In re Winship, supra*, or of offense against "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," *Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934), did not render the conviction constitutionally invalid.

414 U.S. at 149-50. *Cupp* does not stand for the proposition that failure to give any particular requested jury instruction denies a defendant the right to present a complete defense.

In general in order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous, or universally condemned; taken as a whole they must be so infirm that they rendered the entire trial fundamentally unfair. *Waddinngton v. Sarausad,* 555 U.S. 179, 192-94 (2009); *Henderson v. Kibbe,* 431 U.S. 145 (1977). The only question for a habeas court to consider is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62 (1991), *quoting Cupp v. Naughten*, 414 U.S. 141 (1973). The Sixth Circuit has held the category of infractions that violate fundamental fairness is very narrow. *Levingston v. Warden*, 891 F.3d 251 (6th Cir. 2018); *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000), *citing Dowling v. United States*, 493 U.S. 342, 352 (1990), *Keahey v. Marquis*, 978 F.3d 474, 478 (6th Cir. 2020).

In this case the Fifth District noted the trial judge's rejection of the requested accident instruction because the record did not support it. *State v. Remillard, supra*, at ¶ 65. That, of course, is a completely appropriate basis for rejecting an instruction on an affirmative defense if, in fact, it is a fair assessment of the evidence. Remillard, but citing only to his own testimony, at trial

14

invites this Court to make that assessment. Instead, however, the Fifth District found Remillard was fully able to present his accident defense to the jury, both with evidence and by counsel's argument of the accident defense without objection by the State or interruption by the court. Petitioner does not point to any evidence or argument about his accident defense that he was prevented from presenting.

Petitioner has not shown that omission of the requested accident instruction deprived him of the opportunity to present an accident defense or rendered the trial fundamentally unfair in violation of any clearly established Supreme Court precedent. Therefore the Fifth District's decision denying the Third Assignment of Error is entitled to deference under 28 U.S.C. § 2254(d)(1) and Ground Three of the Petition should be dismissed with prejudice.

### Objection to Transfer of the Magistrate Judge Reference

All habeas corpus cases in this District, regardless of location of court, are randomly assigned to a District Judge upon filing. At the Cincinnati and Columbus locations of court, they are also randomly assigned to a Magistrate Judge at the same time. Since 2013, however, all habeas corpus cases filed at Dayton are assigned and referred to the undersigned, who has been serving the Court as a recalled Magistrate Judge since 2011. This is in part to compensate for the fact that Magistrate Judges in Cincinnati and Columbus have access to the services of *pro se* law clerks for habeas and prisoner cases under 42 U.S.C. § 1983[3]. The allocation of these law clerks is made by the Judicial Conference of the United States on a district-wide formula basis, but the Magistrate Judges in Dayton have never had access to their services.

---

[3] Unlike the present case, the vast majority of these two categories of cases (except capital case) are filed *pro se*.

When this case was filed, it was randomly assigned to District Judge Sarah D. Morrison and Magistrate Judge Elizabeth Preston Deavers.  At Magistrate Judge Deavers' instance, the reference was transferred to the undersigned June 22, 2021 (ECF No. 13) and the Report promptly followed.  The transfer practice in this case represents the uniform practice in that regard for many years:  transfers occur only at the instance of the transferor Magistrate Judge in either Cincinnati or Columbus; typically they occur only after a habeas case is ripe for decision.  The case remains assigned for final decision to the originally assigned District Judge[4].

Petitioner objects that the transfer was improper.  He notes that the practice is not reflected in the Columbus location's General Order of Assignment and Reference (General Order Col 14-01).  He complains that the Transfer Order was signed by the transferee Magistrate Judge and not by a District Judge.  He asserts the transfer is contrary to the venue rule regarding habeas cases, S. D. Ohio Civ. R. 82.1(f).  He asserts there are no "facts or law" to support the transfer and that the parties were not notified.  Finally he complains that the Report was issued too quickly after the transfer (Objections, ECF No. 16, PageID 1202-03).

Remillard's Objections to the transfer are without merit.  The United States District Court for the Southern District of Ohio is one Court.  The venue rules within the District are designed to parallel the allocation of judicial resources and to prevent judge-shopping.[5]  While the Judicial Conference of the United States controls where Magistrate Judges will "sit," neither the Conference, the Magistrates' Act (28 U.S.C. §§ 636,  et seq., nor national nor local rules purport to control which cases they will handle within the District.  From 2000 until recently, the undersigned was referred all of the capital habeas cases in the Western Division.  From 2015 to

---

[4] Except that cases assigned to retired or deceased District Judges are reassigned by the Chief Judge.
[5] Before electronic filing, the habeas venue rule helped keep production of large state court record relatively local, a consideration no longer relevant.

date, the undersigned has managed the consolidated § 1983 capital case, *In re Ohio Lethal Injection Protocol Case*, Case No. 2:11-cv-1016, a case venued in Columbus but involving challenges to Ohio's methods of execution by virtually all Ohio's death row inmates.  Variety of assignments characterizes particularly the use of recalled Magistrate Judges:  Columbus recalled Magistrate Judge Norah McCann King currently manages over 100 Social Security disability appeals for the District of New Jersey.  Recalled Columbus Magistrate Judge Terry Kemp, Recalled Covington Magistrate Judge Greg Wehrman, and Recalled Chatanooga Magistrate Judge Billy Carter are all handling Social Security disability cases in the Western District of New York.

Speaking to Remillard's specific objections, the undersigned notes that the Transfer Order is a mere docket clarification matter.  Since Petitioner has no "right" to have his case handled by a particular Magistrate Judge, he has no standing to object to the transfer.  A transfer of reference is not a dispositive matter reserved to Article III judges by the Magistrates' Act.  Petitioner has no knowledge of whether the Magistrate Judge workload in the District needs balancing.  He is apparently unaware, for example, that there are hundreds of Multi-District Litigation Cases pending in Columbus for which the resident Magistrate Judges have significant management responsibility.  Of course any District Judge has authority to veto a transfer order, but over the course of hundreds of such transfers, no District Judge has, despite occasional objections to the transfers.

As a general matter, the habeas transfer practice assists Magistrate Judges in the District who express a need for help and deprives no litigant of any legitimate interest.  The Court should overrule Petitioner's objections to the transfer.

**Constitutionality of the AEDPA**

In his Traverse, Remillard spent twenty-one pages arguing that the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA") was unconstitutional, particularly in its requirement of deference to state court decisions (Traverse, ECF No. 12, PageID 1116-36).  Petitioner's Objections assert the Report does not address his claims that § 2254(d)(1), (d)(2), and (e) are unconstitutional (ECF No. 16, PageID 1203). However, he makes no specific constitution-based objection, but merely incorporates the arguments made in the Traverse that the Act violates the Thirteenth, Fourteenth, and other unspecified Clauses of the Constitution.  *Id.*

The Report acknowledged that the question was properly before this Court, but noted that Remillard cited no precedent holding the AEDPA unconstitutional. The Report concluded Remillard had not overcome the presumption of constitutionality which attaches to Congressional legislation and recommended against finding AEDPA unconstitutional (Report, ECF No. 14, PageID 1158).  That analysis requires expansion.

In his Traverse, Remillard claims the AEDPA violates the separation of powers doctrine (ECF No. 12, PageID 1116-17), the Suspension Clause (*Id.* at PageID 1117-18), the Citizenship Clause of the Fourteenth Amendment (*Id.* at PageID 1120-32), and the Thirteenth Amendment generally (*Id.* at PageID 1132-35).

**Separation of Powers**

Remillard cites a number of circuit judges who have agreed that § 2254(d)(1) is

unconstitutional on separation of powers grounds.  Reviewing the dissenting circuit judge opinions on which Remillard relies, the Magistrate Judge turns first to Judge Lipez's dissent from denial of *en banc* review in *Evans v. Thompson*, 524 F.3d 1 (1st Cir. 2008).  The opinion argues that limiting sources of law for habeas to clearly established Supreme Court precedent as of the time of a final state court decision in the case is an unwarranted intrusion by Congress into the federal courts' obligation to decide cases.  Judge Lipez relies on *Marbury v. Madison*, 5 U.S. 137, 2 L. Ed. 60 (1803), and the duty of courts to say what the law is, as opposed to what it was at some time in the past.  Judge Lipez relies in turn on the dissent from *en banc* review by Judge Reinhardt in *Crater v. Galaza*, 508 F.3d 1261 (9th Cir. 2007), which also makes the separation of powers argument.  In the Sixth Circuit, the same position was taken by Judge Martin, with whom Judges Daughtrey, Moore, Cole, and Clay concurred[6], in his dissent from denial of *en banc* review in *Davis v. Straub*, 445 F.3d 998 (2006).  Judge Martin reiterates the separation of powers argument and relies as well on *Marbury* and *United States v. Klein,* 80 U.S. (13 Wall.) 128, 147 (1871); he also asserts § 2254(d)(1) violates the Suspension Clause.  Finally, Judge John Noonan in *Irons v. Clay*, 505 F.3d 846 (9th Cir. 2007), argued the restrictions in § 2254(d)(1) violated the separation of powers doctrine, relying again on *Marbury* and *Klein*.

While this Court has the authority to consider the constitutionality of § 2254(d)(1) and the cited judges make cogent arguments, the Report recommended not finding the statute unconstitutional on separation of powers grounds.  AEDPA has been the law for twenty-five years and no court has ever declared § 2254(d)(1) unconstitutional which strengthens the presumption of constitutionality usually attaching to Congressional legislation.  The Supreme Court decisions relied on by the cited judges are not directly in point:  *Marbury* involved a Congressional attempt

---

[6] Judge Merritt had also dissented from the panel decision.

19

to expand the jurisdiction of the Supreme Court beyond what the Framers had written; *Klein* was an attempt by Congress to impose a decision in a particular case.

The same Court that decided Marbury also decided that the power of federal judges to issue the writ of habeas corpus was limited by the statute that conferred that power, the Judiciary Act of 1789, and was not the same common-law power enjoyed by English high court judges. *Ex parte Bollman*, 8 U.S. 75, 94, 2 L. Ed. 554 (1807). Prisoners in state custody had no access to federal habeas corpus until Congress expanded the scope of the writ during Reconstruction in 1867. Thus the power of Congress to control the writ has long been recognized. If the use of that power in § 2254(d)(1) is to be declared unconstitutional, that should be done in the first instance by an appellate court.

**Suspension Clause**

In contrast to the cited separation of powers opinions, Remillard cites only one mention of the Suspension Clause. That is in Judge Martin's opinion in *Davis.* It appears there essentially as a tag-along to his separation argument and presents no analysis of why § 2254(d)(1) would violate the Suspension Clause. Just last year the Sixth Circuit held the Suspension Clause did not create a constitutional right to the writ. *Hueso v. Barnhart*, 948 F.3d 324, 326-327 (6th Cir. 2020), quoting *Bollman*, 8 U.S. 75, 94 (1807). While Remillard cites a good deal of academic commentary questioning the AEDPA under the Suspension Clause (Objections, ECF No. 12, PageID 1117-18), there are no court decisions holding AEDPA unconstitutional as a violation of the Suspension Clause.

**Citizenship Clause of the Fourteenth Amendment**

Remillard asserts that § 2254(d)(1) somehow violates the Citizenship Clause of the Fourteenth Amendment. § 1 of the Amendment provides:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Remillard cites no decision of any federal court applying the Citizenship Clause to AEDPA, habeas corpus, or the criminal law. His principal reliance is on *Saenz v. Rose*, 526 U.S. 489 (1999), where the Court held unconstitutional a California statute which limited welfare benefits to citizens who had arrived in California less than twelve months before applying. This restriction on interstate travel was held to violate the Privileges and Immunities Clause, not the Citizenship Clause. § 2254(d)(1) and (2) apply indifferently to all "person[s] in custody pursuant to the judgment of a state court," whether they are citizens or not.

**The Thirteenth Amendment**

Remillard asserts that § 2254(d)(1) is made unconstitutional by the Thirteenth Amendment, but he offers no argument or authority to show how the statute creates or perpetuates a "badge of servitude." He quotes at length the concurring opinion of Justice Douglas in *Jones v. Mayer*, 392 U.S. 409 (1968), about the many ways in which racism continued to permeate American culture and law from the Civil War until he wrote in 1968. Nor has it been eliminated in the fifty years

21

since then. But what is the connection between this and the AEDPA? The Court is unaware of any judge or even academic who has suggested that the AEDPA violates the Thirteenth Amendment. Of course there is the continuing problem of at least implicit racism in many Americans, including judges. But it is invidious to suggest that is a problem only of state judges and not federal judges.

### The Quest for New Constitutional Law

One would expect an attorney arguing in 2021 for new recognition of a constitutional right to *de novo* fact and law finding in habeas to employ arguments more in vogue now than in 1996. As is well known in at least the legal community, many judges have adopted Originalism as the proper interpretive method for the Constitution. That theory requires examining what was the public meaning of constitutional language in 1787 or at the time a particular amendment was adopted. The Report noted that Remillard "discourses broadly on history," including citing the preeminent scholar of Reconstruction, Eric Foner. However, Petitioner nowhere assembles any historical information of the sort which would be required to make an Originalist argument for the interpretations he offers of the Thirteenth and Fourteenth Amendments or of the Suspension Clause.

The foregoing analysis shows that the constitutionality of 28 U.S.C. § 2254(d)(1) can be, and has been, debated among reasonable jurists including distinguished judges of the Sixth Circuit. On the other hand, as the Report notes, none of these judges was able to command a majority of his or her court to find or even consider *en banc* that the statute was unconstitutional. For that reason, the Report recommended a certificate of appealability be issued. That recommendation is

objected to by the Respondent and analyzed below.

**Respondent's Objections**

Respondent objects to the issuance of a certificate of appealability on a number of grounds.

First, the Warden complains that Remillard raised this constitutionality argument for the first time in his Traverse (Objections, ECF No. 18, PageID 1179 et seq.).  The Magistrate Judge agrees that new habeas claims cannot be raised in a reply/traverse.  *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), *citing Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).

But Remillard's constitutionality argument is not a habeas claim.  That is, he does not claim that he is imprisoned directly as a result of the AEADPA.  Instead, he raises his constitutional claim as a rejoinder to Respondent's argument that the AEDPA prevents him from receiving habeas relief.  That is, it provides the Warden with defenses to his claims.

While the distinction may be subtle, it is important and parallels that made by the Supreme Court in *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152 (1908).  In that case the Mottleys had settled a case with the railroad for free passes to ride.  Congress later forbade granting such passes and the railroad refused to honor them the next time the Mottleys sought to ride. In turn the Mottleys brought suit in federal court under the "arising under" head of jurisdiction to have the statute declared unconstitutional as an impairment of contract.  When the case reached the Supreme Court, it dismissed for lack of jurisdiction because the Mottley's cause of action "arose under" their contract with the railroad and not directly under the Constitution.

Respondent next objects that the Sixth Circuit has denied a certificate of appealability on this same issue (Objections, ECF No. 15, PageID 1179, citing *Collins v. Shoop*, No. 18-3766, 2018

U.S. App. LEXIS 37673, at *7 (6th Cir. Dec. 17, 2018) quoting *Irons v. Carey*, 505 F.3d 846, 857 (9th Cir. 2007)).  The Magistrate Judge finds *Collins* is directly in point.  There the petitioner, represented by the same attorney who represents Remillard, sought a certificate of appealability on the question of the constitutionality of AEDPA directly from the Sixth Circuit.  The court noted that "the Supreme Court has upheld the application of AEDPA in a multitude of cases, tacitly assuming its constitutionality." *Id.* at *7, quoting *Irons v. Carey*, 505 F.3d 846, 857 (9th Cir. 2007). It held the claim did not "deserve encouragement to proceed further." *Id.*

Collins persuades the Magistrate Judge to withdraw his recommendation that a certificate of appealability be issued.  This does not prevent Remillard from appealing, but puts the question of appealability in the circuit, back where Congress intended it to be in the first place.  It may be that a sufficient number of circuit judges will be persuaded by the previous dissenting opinions of their colleagues (Judges Merritt, Martin, Cole, Moore, Daughtrey, and Clay) to give this issue fresh consideration.  Or perhaps because *Collins* says the constitutionality of AEDPA has only been tacitly assumed by the Supreme Court, perhaps a sufficient number of circuit judges would want to make that explicit.  In any event, based on *Collins*, the Warden's objection to a certificate of appealability is well taken.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge again recommends that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this

conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

July 30, 2021.

s/ Michael R. Merz
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.